2009 UT App 60

**Bart KOTTER, Petitioner and Appellant,**

v.

**Elizabeth KOTTER nka Elizabeth Vienna, Respondent and Appellee.**

**No. 20070188–CA.**

Court of Appeals of Utah.

March 5, 2009.

Gregory N. Skabelund, North Logan, for Appellant.

Jarrod H. Jennings, Salt Lake City, for Appellee.

Before Judges ORME, DAVIS, and McHUGH.

## OPINION

McHUGH, Judge:

¶ 1 Bart Kotter (Husband) appeals the trial court's January 26, 2007 Findings of Fact and Conclusions of Law and Order.[1] Husband argues that the trial court erred in finding that Judge Low had previously awarded alimony to Elizabeth Kotter, now known as Elizabeth Vienna (Wife), and val-

---

1. Judge Judkins originally presided over these proceedings but removed himself prior to the entry of the bifurcated divorce decree in December 2002. Judge Low was assigned the case, entered the divorce decree, and conducted certain off-the-record proceedings at issue in this appeal. Judge Low recused himself from the case on September 20, 2005, in response to Husband's motion to disqualify him due to multiple attempts by Elizabeth Kotter to communicate ex parte with the trial court. Judge Willmore was then assigned the case and issued the rulings now on appeal.

2. In Husband's Notice of Appeal and his opening brief, he indicated that he was also appealing the trial court's order that he pay Wife $5000 per

ued the family business, Team Builders International, Inc. (the Business), at $1.6 million. Husband further contends that the trial court failed to give proper legal effect to admissions made by Wife, neglected to make adequate findings in its award of alimony to Wife, made findings unsupported by the evidence, and erred in applying the law of the case doctrine to adopt a value for the Business purportedly found by Judge Low. Finally, Husband argues that the trial court, based upon Wife's admissions, should have granted summary judgment on the value of his North Logan home.[2] We reverse and remand.

## BACKGROUND

¶ 2 The parties were married August 4, 1984, and divorced eighteen years later on December 20, 2002.[3] The parties own two homes, one in North Logan, Utah, in which Husband now resides (the North Logan Property), and the other in Hailey, Idaho, where Wife currently lives (the Hailey Property).[4] For the last eight years of the parties' marriage, they jointly operated the Business, a multi-level network marketing enterprise.

¶ 3 In July 2004, the parties and Judge Low agreed to conduct off-the-record proceedings, after which Judge Low would determine who would receive the Business in the property settlement. The parties agreed to waive any right to challenge Judge Low's decision. On August 18, 2004, Judge Low issued a written decision, awarding the Business to Husband provided that Wife receive half its value and "a substantial alimony

---

month for Wife's share of the Business. Husband, however, has not adequately briefed this issue, and we will not consider it. *See* Utah R.App. P. 24; *Valcarce v. Fitzgerald*, 961 P.2d 305, 313 (Utah 1998).

3. The parties stipulated to bifurcation of the divorce from other issues, including property distribution and alimony.

4. The parties also owned two vacant parcels of real property that were sold for net equity of $40,130 in the spring of 2006. This amount was split equally between Husband and Wife, with Wife's share subject to an attorney's lien.

award." The parties did not agree to resolve any other issues through this process, which they deemed an arbitration.[5]

¶4 On April 12, 2005, Husband served Wife with requests for admissions. Of particular relevance to this appeal are the following requests:

> *ADMISSION NO. 3:* Admit the value of the North Logan, Utah home … is … $600,000.
>
> *ADMISSION NO. 4:* Admit there is a negative equity position of $300,000 in the North Logan home. …
>
> . . . .
>
> *ADMISSION NO. 23:* Admit the value of the business, Team Builders International, is $800,000.
>
> . . . .
>
> *ADMISSION NO. 25:* Admit you are *not* entitled to alimony.

After receiving no response from Wife, Husband requested that the admissions be deemed admitted.[6] Judge Willmore admitted the admissions and later ruled that the statements contained within the admissions were conclusively established. *See generally* Utah R. Civ. P. 36(b) ("Any matter admitted under this rule is conclusively established unless the court on motion permits withdrawal or amendment of the admission.").

¶5 On June 10, 2005, Husband moved for summary judgment on the remaining issues, including alimony and the valuation of the Business and the homes. Husband subsequently filed a motion in limine to prevent Wife from presenting evidence regarding alimony and property valuation. Wife failed to respond, and on May 4, 2006, the trial court granted the motion in limine. In his memorandum decision addressing the motion for summary judgment (May 4, 2006 memorandum decision), Judge Willmore valued the Business at $1.6 million[7] and awarded one-

half of that value to Wife. In support of this finding, Judge Willmore held that Judge Low had previously valued the Business at the off-the-record hearing conducted to determine which party would receive the Business. Judge Willmore then valued the Hailey Property at $875,000, determined there was net equity of at least $334,700 in the property, and awarded that home to Wife. In addition, the trial court determined that the North Logan Property was worth $650,000, found that the property had more than $200,000 in negative net equity, and awarded this house to Husband.[8] Finally, the court reserved the issue of alimony for trial.

¶6 Judge Willmore conducted a bench trial on May 31, 2006. Before the trial began, Husband requested that the alimony claim be stricken. To support his argument, Husband referenced the motion in limine and Wife's noncompliance with prior discovery requests and court orders. Judge Willmore denied Husband's request, stating that in the memorandum decision awarding Husband the Business, Judge Low "ruled [without objection] that there would likely be an award of alimony." Consequently, Judge Willmore ruled that he needed to receive some evidence from Wife but that the prior admission and motion in limine would limit how much she could present.

¶7 Following the trial, the court issued a second memorandum decision (July 27, 2006 memorandum decision). Notwithstanding its May 4, 2006 memorandum decision valuing the Business and the real property, the court listed the determination of those values, in addition to alimony, as issues for decision following trial. The trial court again valued the Business at $1.6 million, noting that "[i]n the Court's May 4, 2006 Memorandum Decision, the Court accepted Judge Low's valuation … as the law of the case." It then valued the equity in the Hailey Property at

---

5. We note that arbitration is a dispute resolution method that is an alternative to proceedings in a court of record. *See Buckner v. Kennard,* 2004 UT 78, ¶¶ 16–17, 99 P.3d 842.

6. Under rule 36 of the Utah Rules of Civil Procedure, requests for admissions are automatically admitted when no answer is received within thirty days of service of the requests. *See* Utah R. Civ. P. 36(a)(2).

7. However, the trial court had, just two paragraphs before, deemed Husband's requests for admissions conclusively established. Admission No. 23 valued the Business at $800,000.

8. Again, the trial court relied upon an appraisal, rather than the Admissions Nos. 3–4, to value the North Logan Property.

$342,161, which is consistent with the May 4, 2006 ruling. With respect to the North Logan Property, however, the trial court determined that there was no negative net equity, a finding contrary to both the earlier holding that the North Logan Property had over $200,000 in negative net equity and Wife's admission that the North Logan Property had $300,000 in negative net equity.[9] Finally, the trial court awarded Wife alimony in the amount of $3000 per month. In so ruling, the district court asserted that its decision was based upon the parties' current financial conditions and the law of the case, as articulated by Judge Low, that Wife should receive "a substantial alimony award." The trial court's findings and holdings are memorialized in its July 27, 2006 memorandum decision as well as in its Findings of Fact and Conclusions of Law and its Order, both entered on January 26, 2007.

## ISSUES AND STANDARDS OF REVIEW

■ ¶ 8 On appeal, Husband first asserts that the trial court erred in ruling that Judge Low, as part of the determination of who would receive the Business, awarded Wife alimony and valued the Business at $1.6 million. "Whether a trial court correctly interpreted a prior judicial opinion is a question of law that we review for correctness." *Jensen v. IHC Hosps., Inc.*, 2003 UT 51, ¶ 56, 82 P.3d 1076 (addressing trial court's interpretation of an opinion issued by the Utah Supreme Court).

■ ¶ 9 Husband also argues that the district court failed to recognize the legal effect of the admissions admitted and conclusively established. "The proper interpretation of a rule of procedure is a question of law, and we review the trial court's decision for correctness." *Ostler v. Buhler*, 1999 UT 99, ¶ 5, 989 P.2d 1073.

■ ¶ 10 Husband further challenges the adequacy of the findings and the sufficiency of the evidence to support the trial court's rulings with respect to alimony and contends that the court erred in valuing the Business at $1.6 million. As a general rule,

trial courts have wide discretion in awarding alimony, and an appellate court will disturb such an award only when the trial court exceeds its discretion. *See Bakanowski v. Bakanowski*, 2003 UT App 357, ¶ 7, 80 P.3d 153. However, "'[f]ailure to consider the[ ] [Utah Code section 30–3–5(8)(a) ] factors constitutes an abuse of discretion,'" *Rehn v. Rehn*, 1999 UT App 41, ¶ 6, 974 P.2d 306 (quoting *Stevens v. Stevens*, 754 P.2d 952, 958–59 (Utah Ct.App.1988)), "resulting in reversal 'unless pertinent facts in the record are clear, uncontroverted, and capable of supporting only a finding in favor of the judgment,'" *id.* (quoting *Schaumberg v. Schaumberg*, 875 P.2d 598, 602 (Utah Ct. App.1994)); *accord Bakanowski*, 2003 UT App 357, ¶¶ 8–10, 80 P.3d 153. Likewise, "[i]n divorce actions, the trial court has considerable discretion in adjusting the financial and property interests of the parties, and we will not disturb its decision unless it is clearly unjust or a clear abuse of discretion." *Smith v. Smith*, 751 P.2d 1149, 1151 (Utah Ct.App. 1988) (citation omitted).

¶ 11 Finally, Husband claims the trial court should have granted summary judgment in his favor on the value of the North Logan Property. Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Utah R. Civ. P. 56(c). The denial of summary judgment is a question of law, and we review the trial court's decision for correctness, affording no deference to the trial court. *See Forsberg v. Bovis Lend Lease, Inc.*, 2008 UT App 146, ¶ 7, 184 P.3d 610, *cert. denied*, 199 P.3d 367 (Utah 2008).

## ANALYSIS

### I. Alimony and Business Valuation Findings by Judge Low

#### A. Alimony Award

■■ ¶ 12 In making an alimony award to Wife of $3000 per month for eighteen years,

---

9. Judge Willmore increased the value of the North Logan Property based on two appraisals from Wife valuing the home at $1.75 million and $1.85 million, respectively. In light of this evi-

dence and Husband's testimony that the property had an outstanding mortgage of $856,078.79, Judge Willmore set the value of the North Logan Property at $850,000.

the district court relied upon Judge Low's statement that Wife was to receive "a substantial alimony award" as a condition to Husband's receiving the Business. Indeed, Judge Low suggested the alimony award may be "around $200,000."[10] From these statements, Judge Willmore concluded that "the law of the case.[on alimony] was established by Judge Low in his August 18, 2004 Memorandum Decision."

> [U]nder the law of the case doctrine, "a decision made on an issue during one stage of a case is binding in successive stages of the same litigation." Thus, the doctrine allows a court to decline to revisit issues within the same case once the court has ruled on them.

*IHC Health Servs., Inc. v. D & K Mgmt., Inc.*, 2008 UT 73, ¶ 26, 196 P.3d 588 (quoting *Thurston v. Box Elder County*, 892 P.2d 1034, 1037 (Utah 1995)).

¶ 13 However, Judge Low also said that he was "not locked in on the alimony award" because "[t]hat figure isn't based upon detailed findings of need, ability, and so forth" and that alimony should be awarded "according to [Wife's] needs and abilities as may be found." *See generally* Utah Code Ann. § 30-3-5(8)(a) (2007) (listing seven factors a court must consider before awarding alimony). Even Judge Willmore acknowledged that "there need[ed] to be proof" before the amount of alimony could be set and awarded. Thus, while the record demonstrates that Judge Low contemplated an award of alimony, it also indicates that he intended to engage in further analysis using the statutory factors before making any such award. We therefore hold that the trial court erred in ruling that Judge Low had actually awarded alimony. Consequently, the law of the case doctrine is inapplicable to this issue, and we do not consider it further.

B. Valuation of the Business

■ ¶ 14 Judge Willmore indicated in his May 4, 2006 memorandum decision that "Judge Low accepted the appraisal ... [, presented at the off-the-record proceedings,] which valued [the Business] at $1,600,000," and adopted that value as "the law of the case." However, the record contradicts this assertion. Judge Low expressly stated, "The only issue before the court [during the off-the record proceedings is] the issue of who should get the business." In a subsequent hearing, Judge Low said, "I don't know what the value of this business is.... That's not before me.... We've thrown a figure around of 1.6 million dollars. I don't know if it's worth 1.6 million or six dollars or six billion dollars." He later used the $1.6 million figure to emphasize that Wife should receive half of the established value of the Business: "I want to see $800,000 paid to [Wife] as being one half of the value, which is what I now have before me, and which I'm not suggesting is in fact the value, but that's the only thing I have." Likewise, in his written memorandum decision, Judge Low required Husband to "pay [Wife] one half the value" of the Business and suggested "$800,000 [as Wife's potential share], *if* [$1.6 million] is the value." (Emphasis added.) Further, when Wife asserted at the pretrial conference that Judge Low had determined the value of the Business, Judge Willmore disagreed and recognized Judge Low's illustrative use of the $1.6 million figure, noting that "[Judge Low]'s throwing around some general figure of 1.6 rather than saying it is or a finding that it is 1.6 million."

¶ 15 The only evidence in the record that remotely supports the trial court's finding is Judge Low's explanation, at a hearing on the record,[11] that his "decision as to who gets the business is colored by ... the value of the business.... If it turns out that the business isn't worth the kind of money that you're talking about and it won't continue to produce money ... all bets are off." In light of Judge Low's other statements and the par-

---

10. The alimony obligation terminates upon Wife's remarriage, death, or cohabitation and can be terminated or modified by order of the court. *See* Utah Code Ann. § 30-3-5 (2007). Assuming none of these occur, Husband's total alimony obligation under Judge Willmore's order awarding alimony for eighteen years is $648,000.

11. Judge Low conducted this on-the-record conference on August 12, 2004, where some of the issues discussed in the off-the-record proceedings were clarified.

ties' stipulation that Judge Low decide only the ownership of the Business, we hold that Judge Willmore erred in ruling that Judge Low had previously valued the Business. We further conclude that the law of the case doctrine does not apply to this issue.

## II. Legal Effect of Admissions

▮ ¶ 16 Having concluded that the trial court erred in ruling that an award of alimony was made and the value of the Business was determined by Judge Low, we next consider the effect of Wife's admissions. Rule 36 of the Utah Rules of Civil Procedure permits a party to serve upon another party a request for admissions of fact or application of law to fact. *See* Utah R. Civ. P. 36(a)(1); *Jensen v. Pioneer Dodge Ctr., Inc.*, 702 P.2d 98, 100 (Utah 1985).

> Each matter of which an admission is requested shall be separately set forth. The matter is admitted unless, within thirty days after service of the request, ... the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter, signed by the party or his attorney....

Utah R. Civ. P. 36(a)(2). "Any matter admitted under this rule is conclusively established unless the court on motion permits withdrawal or amendment of the admission." *Id.* R. 36(b). Thus, under the rule, admissions are automatically established as true on the thirty-first day following service of the request, and " '[t]he trial court does not have discretion to unilaterally disregard the admissions.' " *Langeland v. Monarch Motors, Inc.*, 952 P.2d 1058, 1060 (Utah 1998) (emphasis omitted) (quoting *Pioneer Dodge*, 702 P.2d at 100).

¶ 17 Husband served Wife with a request for admissions on April 12, 2005. Wife concedes that she failed to respond to the admissions within thirty days—or at all. According to the express language of rule 36(b), these admissions are conclusively established. *See* Utah R. Civ. P. 36(b). Conse-

quently, in the absence of a motion to withdraw or amend the admissions, the trial court was bound by Wife's concessions that the Business was worth $800,000 and that the North Logan Property was worth $600,000 with negative net equity of $300,000. *See Whitaker v. Nikols*, 699 P.2d 685, 686 (Utah 1985) ("[M]atters deemed admitted are conclusively established as true, unless the trial court on motion by [the party] permits withdrawal or amendment of the admissions."). We accordingly reverse the trial court's finding that the Business was worth $1.6 million and its ruling that the North Logan Property was worth $850,000 with no equity and direct the trial court to adopt, instead, the values admitted by Wife.

▮ ¶ 18 Request for Admission No. 25 asks Wife to admit that she is not entitled to alimony. For the first time at oral argument, Wife claimed that this admission improperly seeks an admission to a legal conclusion. *See generally In re E.R.*, 2000 UT App 143, ¶ 21, 2 P.3d 948 (" 'Admit you lose' type requests, or requests to admit legal conclusions are objectionable and not a proper basis for admission."); *accord Pioneer Dodge*, 702 P.2d at 100. *But see generally* Utah R. Civ. P. 36(a)(1) (allowing admissions that relate to "the application of law to fact"). Assuming, without deciding, that Wife is correct, her objection has been waived. "[I]f a request is objectionable, [and] a party fails to object and fails to respond to the request, that party should be held to have admitted the matter." *Pioneer Dodge*, 702 P.2d at 100–01. Because Wife neither objected to this admission nor moved for withdrawal or amendment of the admission, she lost her claim to alimony.[12] We therefore reverse the trial court's award to Wife of $3000 per month in alimony.

▮ ¶ 19 While we recognize the harsh result rule 36 imposes on Wife, we also must observe the rule's intent: to facilitate discovery, *see Langeland*, 952 P.2d at 1061. *See also Whitaker*, 699 P.2d at 685–86 (reversing judgment where pro se defendants

---

**12.** We further note that although Wife was unrepresented on May 12, 2005, when the admissions were due and thus deemed admitted, counsel entered an appearance on her behalf on June 16, 2005. Nevertheless, Wife did not seek leave from the trial court to withdraw or to amend the admissions, even after obtaining counsel.

neither responded to plaintiff's requests for admissions within thirty days nor moved to withdraw or amend the admissions). "The penalty for delay or abuse is intentionally harsh, and parties who fail to comply with the procedural requirements of rule 36 should not lightly escape the consequences of the rule." *Langeland,* 952 P.2d at 1061.

¶ 20 In this case, Wife made no effort to have the admissions amended or withdrawn. Rather, she merely presented additional evidence on this issue. As a result, the admissions that the Business is worth $800,000,[13] that the North Logan Property is worth $600,000 with $300,000 in negative net equity, and that Wife is not entitled to alimony are conclusively established and legally binding. We therefore reverse and remand for a property division in accordance with these admissions.[14]

 ¶ 21 Furthermore, even without the admissions, the record does not support an award of alimony. Indeed, the trial court noted that Wife "failed to provide to the Court a monthly budget." Notwithstanding this omission, the court tried to determine Wife's need for alimony based upon her "round about [testimony on] her financial condition" and the testimony of the special receiver, who was appointed by the court to manage the Business's assets. In fact, however, the record was inadequate to support such findings. Wife did not testify at all as to her financial condition. Indeed, Wife conceded at oral argument that there is no evidence in the record on Wife's financial needs. In addition, the court-appointed special receiver did not testify to Wife's personal financial condition, stating, "I'm not personally knowledgeable about [her] needs."[15] We therefore would reverse her alimony award regardless of the legal effect of her admission relating to alimony.

---

13. Although Husband argued that the Business was worth less than that, the trial court rejected that testimony.

14. We further conclude that, as a result of the admission, there was no genuine dispute of material fact as to the value of the North Logan Property, *see W.W. & W.B. Gardner, Inc. v. Park W. Vill., Inc.,* 568 P.2d 734, 736 (Utah 1977), and

## CONCLUSION

¶ 22 The trial court incorrectly determined that the Business had been valued and alimony awarded by the previous judge. Consequently, the law of the case doctrine is not relevant to this appeal. Because Wife admitted that the Business was worth $800,000 and that she is not entitled to alimony, these issues are conclusively resolved. Furthermore, Wife admitted that the value of the North Logan Property was $600,000 with $300,000 in negative net equity. Accordingly, the value of the North Logan Property was conclusively established, and summary judgment on this issue was improperly denied. We reverse and remand for entry of a property distribution order that complies with this opinion.

¶ 23 WE CONCUR: GREGORY K. ORME and JAMES Z. DAVIS, Judges.

---

that summary judgment was improperly denied as to that issue.

15. Our case law limits an award of alimony to the recipient's demonstrated need. *See Bingham v. Bingham,* 872 P.2d 1065, 1068 (Utah Ct.App. 1994).